# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'25 OCT 29 PM 3:04

Bruno K. Mpoy )
10703 Lombardy Rd )
Silver Spring, MD 20901 )
)                    Civil Action No.  PX 2 5 CV 0 3 5 6 0
Plaintiff, )
)                    **JURY TRIAL DEMANDED**
)
v. )
)
Montgomery County, Maryland )
Executive Office Building )
101 Monroe Street, 2nd Floor )
Rockville, MD 20850, )
)
And )
)
Luis A. Vasquez )
*In his Personal and Official Capacity,* )
)
Charles Tuckson )
*In his Personal and Official Capacity,* )
)
Robert Vandenengel )
*In his Personal and Official Capacity,* )
)
Christopher Hallums )
*In his Personal and Official Capacity,* )
)
Anthony Harris )
*In his Personal and Official Capacity,* )
)
Steve Fultz )
*In his Personal and Official Capacity,* )
)
Janet Hawkins-Pope )
*In her Personal and Official Capacity,* )
)
Kendll Blumenthal )
*In his Personal and Official Capacity,* )

```
                                      )
Jason Cordero                         )
In his Personal and Official Capacity, )
                                      )
Antonio Ghant                         )
In his Personal and Official Capacity, )
                                      )
  C/O Montgomery County Correctional Facility )
22880 Whelan Ln.                      )
Boyds, MD 20841,                      )
                                      )
         Defendants.                  )
                                      )
_____  )
```

## COMPLAINT FOR BEING BEATEN SEVERELY, SUSTAINING PERMANENT INJURIES, AND BEING DENIED DESPERATELY NEEDED MEDICATION

Plaintiff brings this action against Montgomery County and individual officers because of the permanent injury he sustained as a result of savage assault and sadistic battery against his person while he was detained for less than 24 hours at the Clarksburg correctional facility, without any provocation other than the exercise of his First Amendment rights to plead for desperately needed medication.

In bringing this action, Plaintiff alleges a multitude of specific facts to show above a speculative level that (1) he has a qualified disability pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12010 et seq.; (2) that he informed the defendants of his disability; (3) that he was transferred urgently from the Rockville correctional facility to the Clarksburg facility for medical treatment; (4) that when he arrived at Clarksburg, he requested medical treatment repeatedly

and was repeatedly denied the benefits of medication and other medical programs and services; (5) that instead of providing the prescribed medical treatment as ordered, the defendants disrobed Plaintiff, including his underwear, left him completely nude and placed him in a cold, claustrophobic cell without a bed; (6) that the defendants threatened Plaintiff with severe bodily injury if he did not refrain from requesting medication; (7) that the defendants carried out the threat by severely punching, pummeling, kicking, pulling, and otherwise beating Plaintiff and causing him permanent injury; (8) that while in a solitary cell with no possibility of escape or of posing any danger to anyone, the defendants handcuffed Plaintiff extremely tightly with his hands behind his back and restrained his body and feet to a chair for an excessive period of time without any legitimate correctional objective; (9) that the defendants applied the handcuffs too tightly and left them on Plaintiff for too long without any correctional objective and much longer than would have been necessary if justified; (10) that the defendant's actions show deliberate indifference toward Mr. Mpoy's health and safety; (11) and that the defendants engaged in a cover-up after the fact.

When this Honorable Court of Law analyzes Plaintiff's specific factual allegations and takes them as true until such time as the evidence will establish that they are indeed true, it will be clear that the defendants' actions violated Plaintiff's clearly established rights pursuant to the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12010 et seq., Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794(a), the First Amendment, the Fourth Amendment, and the Fourteenth Amendment, Conspiracy to Interfere with Civil Rights (42 U.S.C. §§ 1985 and 1986), Maryland Declaration of Rights Articles 24 and 40, and Maryland common laws of Assault and Battery, Intentional Infliction of Emotional Distress, and Gross Negligence.

It will also be clear that the individual defendants acted with total disregard for Plaintiff's rights and deliberate indifference toward his health and safety, and that they conspired to interfere with Plaintiff's Constitutional and civil rights.

Plaintiff submits that his specific factual allegations are sufficient to raise a right to relief because according to *Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990)*, a public employee's deliberate indifference to a pretrial detainee's medical needs constitutes deprivation of Constitutional and civil rights. And because according to *Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001)*, a prison officer's deliberate indifference to the safety of a pretrial detainee also constitutes deprivation of Constitutional and civil rights.

## INTRODUCTION OF FACTUAL ALLEGATIONS

1.      On August 25, 2019, Mr. Mpoy sustained permanent injury after he was savagely and brutally tortured and beaten by no less than four correctional officers at the Clarksburg correctional facility where he was held for less than 24 hours during which time he attended a bond hearing and was released pending trial.

2.      The charges against Mr. Mpoy for which he had been held at the Clarksburg facility were dismissed.

3.      At all times relevant to the events that give rise to this civil action, the closed circuit video cameras were running and they captured the events that constitute the basis of the facts alleged, the assault and battery in particular.

4.      The recorded closed-circuit videos are in the custody of Montgomery County, which has refused the release thereof despite two separate requests pursuant to the Maryland Public Information Act (MPIA).

5.      The assault and battery upon Mr. Mpoy was without any provocation whatsoever and was wholly unnecessary and without any justification or legitimate correctional objective.

6.      Notwithstanding the lack of need to use any force, the gravity and degree of force used by Clarksburg facility officers against Mr. Mpoy were unreasonable, and the officers failed to make any effort to use alternative force or minimize the severity of force used.

7.      The assault, battery, and the deprivation of Mr. Mpoy's clearly established Constitutional and civil rights were carried out maliciously with ill will and with deliberate indifference toward Mr. Mpoy's health and safety, and were in line with Montgomery County's pattern and custom of extrajudicial punishment and denial of medical treatment.

8.      Mr. Mpoy filed a police report with the Montgomery County Police Department soon after he was released from the hospital, and reported his injuries to the warden on August 31, 2019, requesting an investigation. Thereafter, Mr. Mpoy followed up with the warden in writing several times. Until the present, the warden has never responded. On August 24, 2022, Mr. Mpoy sent a demand letter to Montgomery County. Until the present, Mr. Mpoy has not received any response from Montgomery County to any of his requests or demand.

## JURISDICTION AND VENUE

9.      This action is against Montgomery County for violations of Plaintiff's rights guaranteed by the First, Fourth, and Fourteenth Amendments of the Constitution of the United States, the Americans with Disabilities Act, Articles 24 and 40 of the Maryland Declaration of Rights, and the common laws of assault and battery, negligence, gross negligence, and intentional infliction of emotional distress. This Honorable Court of Law has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the Constitution and laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and MD. Courts and Judicial Proceedings Code Ann. § 6-102.

10.     Montgomery County is a public entity liable for its employees' violations of the ADA and the Rehabilitation Act. *Paulone v. City of Frederick, 787 F.Supp.2d 360, 377 (D.Md. 2011)*.

11.    "'Under Maryland law, governmental entities do not enjoy immunity from 'respondeat superior liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of the employment'[quoting DiPino v. Davis, 354 Md. 18, 729 A.2d 354, 372 (Md. 1999)]." *Littleton v. Swonger, 502 Fed. Appx. 271, (4th Cir., 2012).*

12.    Luis A. Vasquez, Charles Tuckson, Robert Vandenengel, Christopher Hallums, Anthony Harris, Steve Fultz, Janet Hawkins‑Pope, Kendll Blumenthal, Jason Cordero, and Antonio Ghant are sued in their personal and official capacity pursuant to 42 U.S.C. § 1983, which provides that, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

13. Venue is proper in this Honorable Court of Law under 28 U.S.C. § 139(b)(2) because all the actions giving rise to all the claims occurred in Montgomery County, Maryland.

14.    Plaintiff exhausted administrative remedies and Montgomery County has had actual knowledge of all the actions giving rise to all the claims in this civil action.

## PARTIES

15.  Plaintiff Bruno K. Mpoy is a resident of Montgomery County, Maryland. He is person with a qualified disability in accordance with 42 U.S.C. § 12102 (ADA).

16.    Defendant Montgomery County, Maryland is a local government chartered under the laws of the State of Maryland.

17.    Individually named defendants are all employees of Montgomery County who personally carried out the malicious tortious acts giving rise to this civil action.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

18.    On August 24, 2019, at about 4 P.M., Mr. Mpoy's then-wife was arrested for first-degree assault and battery against him. The Police forbade the then-wife from returning to the house or any block thereof until after trial.

19.    Contemporaneous with the time she was in jail, Mr. Mpoy's then-wife appeared before the commissioner and swore falsely, without any evidence despite 15 years of marriage, that Mr. Mpoy posed a physical menace to her and that she was in imminent danger of being harmed or killed.

20.  Contemporaneously with the release of Mr. Mpoy's then-wife, the commissioner issued a warrant for Mr. Mpoy's arrest.

21.    Upon the release of Mr. Mpoy's then-wife from jail and contemporaneous with the time Mr. Mpoy was incarcerated, Mr. Mpoy's then-wife returned to the marital house and collected her belongings and removed the minor children from the house and took them with her.

22.     The minor children have been in the sole custody of Mr. Mpoy from February 2020 to the present.

23.     On August 25, 2019, at about 1:00 A.M., the Montgomery County Police were stationed outside of Mr. Mpoy's house and had been waiting for a while. Having observed the police lingering in front of his home, Mr. Mpoy approached the police to inquire about their presence, upon which time the police handcuffed Mr. Mpoy.

24.     Mr. Mpoy indicated to the police that he has a disability; that he follows a strict medication regimen; that he had not been able to take all his evening medication because of the events that had transpired during the day; and asked the police to allow him to retrieve his medication.

25.     The police denied Mr. Mpoy's request to retrieve his medication and denied his request for them to enter Mr. Mpoy's home and retrieve his medication or accompany Mr. Mpoy into his home to retrieve the medication. Mr. Mpoy insisted that his disability requires a strict adherence to a medication regimen.

26.    The police responded that the correctional facility in Rockville would administer the medication Mr. Mpoy needed.

27.    Upon arrival at the Rockville correctional facility, Mr. Mpoy repeatedly asked for medication. The correctional officers replied that medication would be administered after Mr. Mpoy "was processed."

28.    After having been "processed", Mr. Mpoy was handcuffed to a fixed seat attached to a desk in the "processing area", where he remained restrained in handcuffs attached to a desk until about 8:30 A.M., without any medication.

29.    The processing area at the Rockville facility is equipped with closed- circuit video camera.

30.    Mr. Mpoy appeared before the Commissioner at about 8:30 A.M. on August 25, 2019. The commissioner decided to hold Mr. Mpoy without bond, citing the unsubstantiated allegations by Mr. Mpoy's then-wife as the reason.

31.    At about noon on August 25, 2019, the medication still not having been administered to Mr. Mpoy, he was placed in a cell and given food just as he had tried to lay down and attempted to sleep. Upon the first bite, Mr. Mpoy experienced severe bodily and mental trauma. He put away the tray of food, removed the jumpsuit and tied it around his neck. The officers removed Mr. Mpoy from the claustrophobic cell and placed him in a larger cell with glass walls.

32.    At about 1:00 P.M., Mr. Mpoy was sent to a nurse for medication. The

nurse asked Mr. Mpoy the names of the medication he takes and the name and address of the pharmacy. Mr. Mpoy provided the names of the medications along with the name and location of the pharmacy. The nurse indicated that she would get the medication.

33.    At about 1:30 P.M., Mr. Mpoy was sent to a medical provider for further evaluation. The medical provider indicated that she would expedite an immediate transfer to the Clarksburg correctional facility so that Mr. Mpoy could be provided medication and accommodated with an appropriate environment.

34.    At about 2:00 P.M., a sheriff transported Mr. Mpoy from the Rockville facility to the Clarksburg facility in a police sedan.

35.    Upon arrival at Clarksburg, an officer informed Mr. Mpoy that he would see a medical provider shortly and asked Mr. Mpoy if he wanted pizza. The officer yelled out to his colleague to bring pizza as he walked Mr. Mpoy to a cell. The pizza was never brought.

36.    At all times relevant to all the events that give rise to this civil action, Montgomery County and individual defendants had knowledge that Mr. Mpoy was a person with a qualified disability.

37.    The correctional officer reiterated to Mr. Mpoy that a medical provider would see him shortly.

38.    Upon arrival to the cell area, the correctional officer asked Mr. Mpoy to

remove the prison-issued jumpsuit and his underwear. The officer placed them along with Mr. Mpoy's processing papers in a bag. The officer declined Mr. Mpoy's request to keep his processing papers.

39.    Mr. Mpoy remained completely nude in a cell that was very cold and did not have a bed until he attended the bond hearing at about 1 or 2 P.M. on August 26, 2019.

40.    Mr. Mpoy was denied placement in an environment prescribed in the medical order pursuant to which he was transferred from Rockville to Clarksburg urgently.

41.    While Mr. Mpoy was nude and waiting for a medical provider in a cold, claustrophobic cell, he repeatedly informed the officer that he needed medication and requested to see a medical provider repeatedly, tapping on the door to the cell as the officer continuously ignored his pleas. Minutes turned into hours and every second felt like a year to him.

42.    Mr. Mpoy was in a solitary cell. He posed no danger to anyone. He posed no risk of escape.

43.    Mr. Mpoy's pleas for accommodation in accordance with the ADA went unanswered.

44.    Instead of accommodating Mr. Mpoy's disability in accordance with the ADA, the officer came to Mr. Mpoy's cell and brandished pepper spray at least twice, saying that he would beat up Mr. Mpoy if he did not stop tapping on the door to get his attention.

45.    The officer came around again, at least twice more, and said that he would get eight big guys to tie Mr. Mpoy to a chair and beat him if he didn't stop tapping on the door.

46.    When a medical provider finally arrived, Mr. Mpoy relayed to her his disability and medical condition. He told her that he felt as if he could not breathe; his body felt as if he had bugs crawling up every inch of his skin; that his neck felt stiff; that his upper back tingled and felt pins and needles; that his brain raced like a spinning disk, that his head was hot; and that without medication, only death would have been better. Mr. Mpoy also relayed to the medical provider that he was transferred from Rockville to Clarksburg on an emergency basis so that he could receive medical treatment.

47.    Montgomery County and the individual defendants, including the medical provider, had ample time and numerous opportunities to provide the accommodation to which Mr. Mpoy was entitled as a person with a qualified disability.

48.    The medical provider did not accommodate Mr. Mpoy's pleas for medication.

49. Instead of providing accommodation in accordance with the ADA, the

medical provider replied to Mr. Mpoy's request for accommodation by telling him summarily that he must wait until Monday morning to see a doctor, and leaving abruptly.

50.    As Mr. Mpoy continued to tap on the door, the medical provider returned and restated that Mr. Mpoy must wait until Monday morning to see a doctor; upon which time Mr. Mpoy stuck his head into the toilet bowl.

51.    Shortly after Mr. Mpoy stuck his head in the toilet bowl, a mob of male officers appeared in front of his cell with a restraining chair.

52.    The male officers who came to Mr. Mpoy's cell menaced him and angrily ordered Mr. Mpoy to put his hands in the slot of the door to be handcuffed.

53.    Having been repeatedly threatened with severe physical harm by "big guys," Mr. Mpoy was terrified of what had been promised and did not put his hands through the slot to be handcuffed.

54.    As the male officers attempted to storm into Mr. Mpoy's cell, Mr. Mpoy exited the cell, hoping that the video cameras would deter them from inflicting physical harm upon his person. The video cameras did not deter the officers.

55.    Mr. Mpoy was so terror-stricken, that he defecated on himself and onto the floor as the officers intentionally and balefully lunged at him, tugged him, knocked him to the floor and pummeled him, as he tried to assume a fetal position.

56.    The officers, without any correctional objective and with malicious intent

and deliberate indifference toward Mr. Mpoy's health and safety, pulled him, punched him, kicked him, and placed their weight on him while he was on the floor and trying to assume a fetal position.

57.     While completely nude and in the presence of at least one female, multiple officers, without any legitimate correctional objective and with malicious intent and deliberate indifference toward Mr. Mpoy's health and safety, took turns punching and kicking him mostly about his head and all over his body.

58.     The officers, without any legitimate correctional purpose and with malicious intent and deliberate indifference toward Mr. Mpoy's health and safety, placed Mr. Mpoy in a restraining chair while he was still completely nude, handcuffed his hands extremely tightly behind his back, and restrained his body and legs to the chair.

59.     A female nurse administered at least two shots of sedative medication to Mr. Mpoy.

60.     Despite having been sedated and despite posing no danger to anyone, the officers placed Mr. Mpoy in the solitary cell while he was still nude and his body and feet retrained to the chair with his hands behind his back in extremely tight handcuffs.

61.     The officers displayed their sadistic intent, malicious animus, and deliberate indifference toward Mr. Mpoy's health and safety by positioning the

restraining chair to which he was retrained in the nude directly in front of the toilet bowl in which he had stuck his head.

62. The officers exhibited their deliberate indifference and malicious intent by leaving Mr. Mpoy in extremely tight handcuffs with his hands behind his back and his body and feet restrained to the chair longer than would have been necessary if justified and without any legitimate correctional purpose.

63. Despite having been sedated, Mr. Mpoy woke up from time to time and screamed his lungs out because the pain from the handcuffs and the restrained body was excruciating.

64. The length of time during which Mr. Mpoy was restrained to the chair in extremely tight handcuffs behind his back and anchored feet can be ascertained only through the closed-circuit video, which Montgomery County has repeatedly refused to release despite multiple requests pursuant to Maryland Public Information Act.

65. At all times relevant to the events that give rise to this civil action, the medical programs, services, and benefits Montgomery County provided to Mr. Mpoy were not the same or equivalent to those provided to other detainees.

66. At all times relevant to the events that give rise to this civil action, the medical treatment received by Mr. Mpoy from Montgomery County was disparate from those provided to other detainees.

67.    The individual defendants deprived Mr. Mpoy of the opportunity to eat dinner during the entire period he was detained at Clarksburg. He does not recall whether he was offered breakfast or lunch on August 26, 2019, before he was released. He believes that he was not offered breakfast or lunch.

68.    Montgomery County did not assess or provide any medical treatment for Mr. Mpoy's injuries.

69.    At the time Mr. Mpoy was being transferred back to the Rockville correctional facility after he was released on his own recognizance, he requested his processing papers and underwear. The correctional officer responded that Mr. Mpoy's processing papers and underwear would be given to him at the Rockville correctional facility. Mr. Mpoy never recovered his processing papers or underwear, despite repeated attempts to request them in person and by phone.

70.    Upon release, Mr. Mpoy went to the emergency room. The emergency room doctor referred him to a specialist for treatment of a permanent injury. Mr. Mpoy is still under the care of a specialist.

71.    The charges against Mr. Mpoy for which he was incarcerated were dismissed.

72.    The photos of his injuries show that Mr. Mpoy sustained multiple bruises and abrasions.

73.    The individually named defendants knew or should have known, as any

reasonable person should, that Mr. Mpoy had a clearly established right to exercise his First Amendment right; to benefit from the medical programs, services, and other benefits administered by Montgomery County without discrimination based on disability; to be secure in his person; to be free from extrajudicial punishment without the judgment of his peers; and to benefit from the equal protection of the laws.

74.    Instead of fulfilling their official duties to respect and protect Mr. Mpoy's clearly established rights, at least two individual defendants, motivated by iniquitous and discriminatory ill will based on disability, agreed with each other and with others to inflict extrajudicial punishment upon Mr. Mpoy and deprive him of the benefits, privileges, and the rights guaranteed by the Constitution and the laws of Maryland and the United States.

75.    At least two individual defendants communicated with each other and with others and agreed to inflict physical pain upon Mr. Mpoy; to deprive him of the medication he desperately needed; to delay the administration of any medication; to deprive him of his First Amendment right to request medication and remind them that he was transferred from the Rockville facility to the Clarksburg facility on an emergency basis to benefit from the medical programs and services administered at the Clarksburg facility; to deprive him of the equal protection of the laws by inflicting extrajudicial punishment and emotional distress upon him;

and to humiliate, demoralize, and dehumanize him by denying him the right to express his feelings and sentiments, denying him desperately needed medication, inflicting physical pain upon his body, placing him in a cell while he was completely nude, stationing him in front of the toilet bowl while he was restrained to a chair with his arms behind his back and handcuffed too tightly even though he was in a locked solitary cell with no possibility of escape or of endangering anyone.

76.    At least two individual defendants further communicated with each other and with others to cover up their unlawful acts of assaulting and battering Mr. Mpoy and depriving him of his Constitutional and civil rights.

77.    At least two individual defendants had prior knowledge of the agreement to deprive Mr. Mpoy of the medication he desperately needed.

78.    At least two individual defendants had the power to prevent the denial of medication Mr. Mpoy desperately needed.

79.    At least two individual defendants had prior knowledge of the agreement to inflict physical pain upon the body of Mr. Mpoy.

80.    At least two individual defendants had the power to prevent the infliction of pain upon Mr. Mpoy's body.

81.    Mr. Mpoy exhausted the administrative remedies. He filed a complaint and followed up multiple times in writing. Mr. Mpoy has never received any

response from Montgomery County for any of the administrative complaints he filed.

82.    Mr. Mpoy filed an administrative complaint on or about August 31, 2019, and followed up in writing multiple times. He never received any response.

83.    On or about August 24, 2022, Mr. Mpoy filed an administrative demand letter with Montgomery County. He never received any response.

84.    Through the Maryland Public Information Act, Mr. Mpoy requested information related to the events that give rise to this civil action.

85.    The limited information released by Montgomery County through the Maryland Public Information Act establishes that Montgomery County received Mr. Mpoy's administrative Complaint.

86.    Montgomery County engaged in a cover-up of the atrocities Montgomery County and individual defendants committed against Mr. Mpoy. The limited information released by Montgomery County through the Maryland Public Information Act establishes the cover-up.

### CLAIM I - AGAINST MONTGOMERY COUNTY
### VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT:
#### *FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS*

87.    Plaintiff realleges and incorporates paragraphs 1 through 86 as if fully set forth herein.

88.    Title II of the Americans with Disabilities Act (42 U.S.C. § 12132)

provides that, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

89.    Title II of the Americans with Disabilities further provides through the Code of Federal Regulations [28 CFR 35.130(b)(1)] that, "A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability" may not "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service," as provided in Regulation 28 CFR 35.130(b)(1)(i).

90.    Regulation 28 CFR 35.130(b)(1)(iii) of Title II of ADA provides that a public entity may not "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others."

91.    Regulation 28 CFR 35.130(b)(1)(iv) of Title II of ADA provides that a public entity may not "[p]rovide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals

with disabilities with aids, benefits, or services that are as effective as those provided to others."

92.    Regulation 28 CFR 35.130(b)(1)(vii) of ADA Title II provides that a public entity may not "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service."

93.  At all times relevant to all the events that give rise to this civil action, Mr. Mpoy was a person with a qualified disability pursuant to 42 U.S.C. § 12102 (ADA).

94.  Montgomery County and the individual defendants were aware of Mr. Mpoy's qualified disability. In accordance with the ADA and all of its provisions, including the ones aforementioned, Mr. Mpoy was entitled to participate in the benefits, programs, services, aids, privileges, rights, and advantages offered by Montgomery County and enjoyed by others in the Montgomery County correctional facilities.

95.    At all times relevant to the events that give rise to this civil action, Montgomery County was the public entity required to provide Mr. Mpoy, as an individual with a qualified disability, with access to the benefits, services, aids, privileges, rights, and advantages without discriminating against him based on disability.

96.    Despite having had full knowledge of the nature of Mr. Mpoy's qualified disability and the accommodations he needed in accordance with the ADA, Montgomery County failed to provide any accommodation during the entire period Mr. Mpoy was in its custody at the Clarksburg correctional facility, even though Mr. Mpoy was transferred from the Rockville correctional facility on an emergency basis for the purpose of being afforded accommodation pursuant to the ADA.

97.    Instead of providing the required accommodations, consisting simply of the medication and environment that accommodates his disability, Montgomery County discriminated against Mr. Mpoy based on disability, deprived him of his basic rights to be secure in his person by exposing him to a cold, claustrophobic cell while he was completely nude, denying him medication, and inflicting pain upon his body. The defendants tortured him by denying his request for medication, threatening him, and battering him sadistically.

98.    As a direct and proximate result of Montgomery County's actions and omissions, Mr. Mpoy sustained and will in the future sustain, temporary injury, permanent injury, severe humiliation, embarrassment, dehumanization, post- traumatic stress, exacerbation of his disability, loss of enjoyment of life, and economic and financial damages.

99.  Montgomery County is liable for the actions and omissions of its

employees who acted under its authority and violated Mr. Mpoy's rights guaranteed by the ADA.

100.    WHEREFORE, Plaintiff prays for a declaratory judgment against Montgomery County for its violation of the ADA, enjoining it from future violations; and a monetary judgment for actual and compensatory damages in an amount to be determined by a jury; and for reasonable costs and attorneys' fees.

<u>**CLAIM II - AGAINST MONTGOMERY COUNTY**</u>

<u>**VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT:**</u>

<u>***FAILURE TO ADMINISTER, TRAIN, AND SUPERVISE***</u>

101.    Plaintiff realleges and incorporates paragraphs 1 through 100 as if fully set forth herein.

102.    Title II of the Americans with Disabilities provides through the Code of Federal Regulations [28 CFR 35.130(d)] that, "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

103.    Montgomery County failed to implement managerial protocols necessary to comply with 28 CFR 35.130(d). A proper administrative and supervisory program would have equipped Montgomery County with the necessary managerial tools and infrastructure to facilitate the training of personnel and the dissemination of information to ensure compliance with the ADA.

104.    As a direct result of Montgomery County's failure to administer, train,

and supervise in accordance with 28 CFR 35.130(d), Mr. Mpoy was subjected to discrimination and suffered and will in the future suffer temporary injury, permanent injury, physical pain and suffering, severe humiliation, embarrassment, dehumanization, post-traumatic stress, exacerbation of his disability, loss of enjoyment of life, and economic and financial loss.

105.    Montgomery County is liable for violations of Title II, 28 CFR 35.130(d) of the ADA.

106.    WHEREFORE, Plaintiff prays for a declaratory judgment against Montgomery County for its violation of Title II, 28 CFR 35.130(d) of the ADA and for failing to administer programs and services and to train and supervise employees in accordance with Title II, 28 CFR 35.130(d). Plaintiff prays for an order enjoining Montgomery County from future violations; for a monetary judgment for actual and compensatory damages in an amount to be determined by a jury; and for reasonable costs and attorneys' fees.

**CLAIM III - AGAINST MONTGOMERY COUNTY**

**VIOLATION OT SECTION 504 OF THE REHABILITATION ACT OF 1973**

107.    Plaintiff realleges and incorporates paragraphs 1 through 106 as if fully set forth herein.

108.    Section 504 of the Rehabilitation Act of 1973 ("Section 504") provides that, "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." [29 U.S.C. § 794(a)].

109.    Montgomery County is a municipality that receives Federal funding for public programs and services and is therefore subject to the requirements of 29 U.S.C. § 794(a).

110.  Montgomery County violated 29 U.S.C. § 794(a) when it deprived Mr. Mpoy of the benefits of medical treatment and a suitable environment necessary to accommodate his disability.

111.    Montgomery County further violated 29 U.S.C. § 794(a) by discriminating against Mr. Mpoy and treating him disparately from other detainees. The disparate treatment consists of suppressing Mr. Mpoy's First Amendment rights, assaulting him savagely, battering him sadistically, disrobing Mr. Mpoy and leaving him completely nude, placing him in a cold, claustrophobic and isolated cell in contradiction to the medical order made by the medical provider who initiated an emergency transfer from the Rockville facility to the Clarksburg facility.

112.    As a direct result of Montgomery County's violation of 29 U.S.C. § 794(a)., Mr. Mpoy suffered and will in the future suffer temporary injury, permanent injury, physical pain and suffering, severe humiliation, embarrassment,

dehumanization, post-traumatic stress, exacerbation of his disability, loss of enjoyment of life, and economic and financial loss.

113. Montgomery County is liable for the violation of 29 U.S.C. § 794(a).

114.    WHEREFORE, Plaintiff prays for a declaratory judgment against Montgomery County for its violation of 29 U.S.C. § 794(a), enjoining it from future violations; and for a monetary judgment for actual and compensatory damages in an amount to be determined by a jury; and for reasonable costs and attorneys' fees.

### CLAIM IV - AGAINST INDIVIDUAL DEFENDANTS PURSUANT TO 42 U.S.C. § 1983 FOR VIOLATION OF THE FOURTH AMENDMENT: *EXCESSIVE FORCE*

115.    Plaintiff realleges and incorporates paragraphs 1 through 114 as if fully set forth herein.

116.    At all times relevant to the events that give rise to this civil action, all the individual defendants acted under the color of law and custom.

117.    Mr. Mpoy posed no threat or danger to anyone as he was locked in a solitary cell completely nude.

118.    The individual defendants acted with malice, sadistic intent, and deliberate indifference toward Mr. Mpoy's health and safety when they used excessive force against Mr. Mpoy without a legitimate correctional objective and with utter disregard for his clearly established Fourth Amendment rights.

119.   The use of force against Mr. Mpoy was unjustified and unnecessary as he had no reason not to comply with the administration of medication he needed desperately and for which he had been pleading.

120.   The individual defendants knew that the force they used against Mr. Mpoy was unlawful because the information released through the Maryland Freedom of Information Act shows that they engaged in a cover-up.

121.   As a direct result of the individual defendant's conduct, Mr. Mpoy sustained and will in the future sustain temporary injury, permanent injury, physical pain and suffering, severe humiliation, embarrassment, dehumanization, post-traumatic stress, exacerbation of his disability, loss of enjoyment of life, and economic and financial loss.

122.   The individual defendants are liable for violating Mr. Mpoy's Fourth Amendment rights.

123.   WHEREFORE, Plaintiff prays for a declaratory judgment against the defendants for violation of the Fourth Amendment, enjoining them from future violations; and for a monetary judgment for actual and compensatory damages in an amount to be determined by a jury; and for reasonable costs and attorneys' fees.

### CLAIM V

### VIOLATION OF THE FOURTEENTH AMENDMENT

### *DUE PROCESS OF LAW*

124.   Plaintiff realleges and incorporates paragraphs 1 through 123 as if fully

set forth herein.

125. The defendants, acting under color of law and customs, deprived Mr. Mpoy of his Constitutional rights guaranteed by the Fourteenth Amendment to be free and secure in his person without due process of law, to be free from barbaric assault and extrajudicial punishment of sadistic battery by individuals with authority under law and from whom Mr. Mpoy could not protect himself.

126. The defendants, acting under color of law and customs, with malicious intent and deliberate indifference toward Mr. Mpoy's health and safety, deprived Mr. Mpoy of his Constitutional rights to enjoy the liberty of access to desperately needed medication.

127. The defendants, acting under color of law and customs, with malicious intent and deliberate indifference toward Mr. Mpoy's health and safety, deprived him of the right to be free from extrajudicial punishment without the judgment of his peers or due process of law.

128. The defendants knew, as any reasonable person would, that their deprivation of Mr. Mpoy's rights to liberty and security in his person was unlawful

129. As a direct result of the defendants' actions, Mr. Mpoy suffered and will in the future suffer temporary injury, permanent injury, physical pain and suffering, severe humiliation, embarrassment, dehumanization, post-traumatic stress, exacerbation of his disability, loss of enjoyment of life, and economic and

financial loss.

130.   The defendants are liable for violating Mr. Mpoy's

Fourteenth Amendment due process rights.

131.   WHEREFORE, Plaintiff prays for a declaratory judgment against

the defendants for violation of the Fourteenth Amendment, enjoining them

from future violations; and for a monetary judgment for actual and

compensatory damages in an amount to be determined by a jury; and for

reasonable costs and attorneys' fees.

**CLAIM VI - AGAINST INDIVIDUAL DEFENDANTS**

**CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**

**42 U.S.C. §§ 1985 and 1986**

132.   Plaintiff realleges and incorporates paragraphs 1 through 131 as if

fully set forth herein.

133.   The individual defendants were motivated by malicious discriminatory

ill will based on Mr. Mpoy's disability.

134.   At least two or more of the individual defendants conspired with each

other and together to deprive Mr. Mpoy of the equal protection of the laws,

benefits, services and privileges, and to deprive him of the right to be secure in his

person and to be free from assault and battery, resulting in serious and permanent

injury to Mr. Mpoy.

135.   At least two individual defendants, severally and together with other

defendants, had prior knowledge of the acts that resulted in temporary and permanent physical injury to Mr. Mpoy and in the deprivation of his civil rights.

136.    Each individual defendant, severally and together with other defendants, had the power to prevent or aid in preventing the commission of the assault and battery and the deprivation of Mr. Mpoy's civil rights.

137.    Each individual defendant, severally and together, failed to prevent and failed to aid in the prevention of the acts that resulted in Mr. Mpoy's injuries and deprivation of civil rights.

138.    As a direct result of the defendants' actions, Mr. Mpoy suffered and continues to suffer temporary injury, permanent injury, physical pain and suffering, severe humiliation, embarrassment, dehumanization, post-traumatic stress, exacerbation of his disability, loss of enjoyment of life, and economic and financial loss.

139.    The defendants are liable for violations of 42 U.S.C. §§ 1985 and 1986, for conspiring to discriminate against Mr. Mpoy based on disability and to violate Mr. Mpoy's Constitutional and civil rights.

140.    WHEREFORE, Plaintiff prays for a declaratory judgment against the defendants for violation of 42 U.S.C. §§ 1985 and 1986, enjoining them from future violations; and for a monetary judgment for actual and compensatory damages in an amount to be determined by a jury; and for reasonable costs and

attorneys' fees.

## CLAIM VII - AGAINST INDIVIDUAL DEFENDANTS

## COMMON LAW ASSAULT AND BATTERY

141.    Plaintiff realleges and incorporates paragraphs 1 through 140 as if fully set forth herein.

142.    The individual defendants, individually and collectively, threatened Mr. Mpoy with physical harm upon his person for exercising his First Amendment right to demand equal protection of the laws and to participate in public privileges, benefits, aids, and services without discrimination against him based on disability.

143.    The individual defendants, jointly and severally, displayed a malicious intent to cause physical harm upon the body of Mr. Mpoy.

144.    The individual defendants, separately and collectively, and without any legitimate correctional objective, did come into unwelcomed physical contact with the body of Mr. Mpoy and did use their hands and feet to punch, pummel, strike, kick, pull, yank, and otherwise inflict physical pain upon the body of Mr. Mpoy, and did apply handcuffs extremely tightly and did restrain Mr. Mpoy to a chair with his arms handcuffed behind his back for longer than would have been necessary if justified.

145.    As a direct result of the individual defendant's actions, Plaintiff sustained and continues to sustain and will in the future sustain temporary and permanent injury that caused Mr. Mpoy to suffer physical pain, emotional distress,

exacerbation of his disability, severe humiliation, embarrassment, dehumanization, post-traumatic stress, exacerbation of his disability, loss of enjoyment of life, and economic and financial loss.

146. The individual defendants are liable for the tort of assault and battery.

147. WHEREFORE, Plaintiff prays for a declaratory judgment against the defendants for the violation of the common law of assault and battery, enjoining them from future violations; and for a monetary judgment for actual and compensatory damages in an amount to be determined by a jury; and for reasonable costs and attorneys' fees.

## CLAIM VIII - VIOLATION OF THE FOURTEENTH AMENDMENT
### *FAILURE TO PROTECT*

148. Plaintiff realleges and incorporates paragraphs 1 through 147 as if fully set forth herein.

149. The defendants had a duty to protect Mr. Mpoy's health and safety.

150. Montgomery County has demonstrated a pattern of depriving inmates of the equal protection of the laws and their health and safety.

151. Montgomery County's pattern constitutes a custom of engaging in summary deprivation of equal protection of the laws and of inmates' health, well-being, and safety.

152. As a direct result of Montgomery County's custom, the individual defendants, freely and with impunity, deprived Mr. Mpoy of the health and

physical safety guaranteed by the Constitution and the laws of the United States and Maryland.

153.    The defendants' actions caused Mr. Mpoy to suffer, to continue to suffer, and to suffer in the future temporary injury, permanent injury, physical pain and suffering, severe humiliation, embarrassment, dehumanization, post-traumatic stress, exacerbation of his disability, loss of enjoyment of life, and economic and financial loss.

154.    WHEREFORE, Plaintiff prays for a declaratory judgment against the defendants for violation of the Fourteenth Amendment and failing to protect Mr. Mpoy, enjoining them from future violations; and for a monetary judgment for actual and compensatory damages in an amount to be determined by a jury; and for reasonable costs and attorneys' fees.

<u>**CLAIM IX - FIRST AMENDMENT RETALIATION**</u>

155.    Plaintiff realleges and incorporates paragraphs 1 through 154 as if fully set forth herein.

156.    Mr. Mpoy exercised his First Amendment right to request medication and remind the defendants that he was transferred from the Rockville facility to the Clarksburg facility urgently so that he could benefit from the administration of medicine and the accommodation of his qualified disability.

157.    The defendants responded by suppressing Mr. Mpoy's protected Constitutional activity and threatening him with severe bodily harm if he did not

refrain from engaging in the protected Constitutional activity of requesting medication.

158.    The defendants' threats were directly linked to Mr. Mpoy's participation in the Constitutionally protected activity, and therefore amount to retaliation.

159.    When Mr. Mpoy continued to engage in the Constitutionally protected activity, the defendants carried out the threat by inflicting physical harm upon Mr. Mpoy's body.

160.    The defendants' infliction of physical pain upon Mr. Mpoy's person is directly linked to his exercise of his Constitutional rights, and therefore constitutes retaliation.

161.    As a direct result of the defendants' prohibited retaliation, Mr. Mpoy suffered and will in the future suffer temporary injury, permanent injury, physical pain and suffering, severe humiliation, embarrassment, dehumanization, post-traumatic stress, exacerbation of his disability, loss of enjoyment of life, and economic and financial loss.

162.    The individual defendants are liable for retaliating against Mr. Mpoy for engaging in Constitutionally protected activity.

163.    WHEREFORE, Plaintiff prays for a declaratory judgment against the defendants for retaliating against Mr. Mpoy in violation of the First Amendment, enjoining them from future violations; and for a monetary judgment for actual and

compensatory damages in an amount to be determined by a jury; and for reasonable costs and attorneys' fees.

### CLAIM X - DEPRIVATION OF DUE PROCESS

#### *Maryland Declaration of Rights Article 24*

164.    Plaintiff realleges and incorporates paragraphs 1 through 163 as if fully set forth herein.

165.    Article 24 of the Maryland Declaration of Rights provides that, "[N]o man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

*166.*    Article 24 of the Maryland Declaration of Rights affords pretrial detainees the same due process protection as the Fourteenth Amendment. *Smith v. Bortner, 193 Md. App. 534, 553 (2010).*

167.    The individual defendants acted with deliberate indifference when they deprived Mr. Mpoy of his liberties to request medication, privileges, and safety in his person without the judgment of his peers.

168.    The individual defendants acted with deliberate indifference when they punished him corporally without the judgment of his peers or the law of the land.

169.    As a direct result of the defendants' prohibited violation of Article 24 by depriving Mr. Mpoy of rights, privileges, and safety in his person, Mr. Mpoy

suffered and will in the future suffer physical pain, emotional distress, temporary and permanent injury, exacerbation of his disability, post-traumatic stress, loss of enjoyment of life, and economic and financial loss.

170.    The defendants are liable for violation of Article 24 of the Maryland Declaration of Rights.

171.    WHEREFORE, Plaintiff prays for a declaratory judgment against the defendants for retaliating against Mr. Mpoy in violation of the Maryland Declaration of Rights Article 24, enjoining them from future violations; and for a monetary judgment for actual and compensatory damages in an amount to be determined by a jury; and for reasonable costs and attorneys' fees.

### CLAIM XI - RETALIATION FOR PROTECTED SPEECH
#### *Maryland Declaration of Rights Article 40*

172.    Plaintiff realleges and incorporates paragraphs 1 through 171 as if fully set forth herein.

173.    Article 40 of the Maryland Declaration of Rights provides that, "[E]very citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege."

174.    Mr. Mpoy engaged in speech protected by Article 40 when he requested desperately needed medication and when he reminded the individual defendants that he was transferred from the Rockville facility to the Clarksburg facility to participate in the privileges, programs, services, and benefits administered at the

Clarksburg facility which include but are not limited to the administration of medication and an environment commensurate with Mr. Mpoy's medical needs in accordance with his qualified disability as provided by the ADA.

175.    The corporal punishment sustained by Mr. Mpoy at the hands of the individual defendants is directly connected to his continued exercise of his Constitutionally protected speech because the individual defendants threatened Mr. Mpoy with bodily harm if he did not refrain from exercising speech protected by Article 40.

176.    As a direct result of the defendants' prohibited retaliation, Mr. Mpoy suffered and will in the future suffer physical pain, emotional distress, temporary and permanent injury, exacerbation of his disability, humiliation, dehumanization, post-traumatic stress, loss of enjoyment of life, and economic and financial loss.

177.    The defendants are liable for the violation of Article 40 of the Maryland Declaration of Rights.

178.    WHEREFORE, Plaintiff prays for a declaratory judgment against the defendants for retaliating against Mr. Mpoy in violation of the Maryland Declaration of Rights Article 40, enjoining them from future violations; and for a monetary judgment for actual and compensatory damages in an amount to be determined by a jury; and for reasonable costs and attorneys' fees.

## CLAIM XII - WILLFUL AND MALICIOUS NEGLIGENCE

179.   Plaintiff realleges and incorporates paragraphs 1 through 178 as if fully set forth herein.

180.   The defendants had a duty to keep Mr. Mpoy safe and free from physical harm and to protect him from the deprivation of privileges, benefits, medical programs, and services enjoyed by other pretrial detainees.

181.   The defendants breached their duty by intentionally and maliciously punching, kicking, pummeling, pulling, yanking, and otherwise causing bodily harm to Mr. Mpoy, and by depriving him of the privileges, benefits, programs, and services enjoyed by other pretrial detainees.

182.   As a direct result of the defendants' prohibited retaliation, Mr. Mpoy suffered and will in the future suffer physical pain, emotional distress, temporary and permanent injury, exacerbation of his disability, humiliation, dehumanization, post-traumatic stress, loss of enjoyment of life, and economic and financial loss.

183.   The defendants are liable for negligence motivated by malicious intent to deprive Mr. Mpoy of the equal protection of the laws and a sadistic desire to inflict maximum physical pain and emotional distress.

184.   WHEREFORE, Plaintiff prays for a declaratory judgment against the defendants for willful and malicious negligence, enjoining them from future violations; and for a monetary judgment for actual and compensatory damages in

an amount to be determined by a jury; and for reasonable costs and attorneys' fees.

### CLAIM XIII - WILLFUL AND MALICIOUS GROSS NEGLIGENCE

185.    Plaintiff realleges and incorporates paragraphs 1 through 184 as if fully set forth herein.

186.    The defendants' malicious and sadistic assault and battery against Mr. Mpoy were carried out recklessly and with gross negligence. The defendants knew that their actions were unlawful and contrary to their official duties of providing Mr. Mpoy with equal protection of the laws to keep him safe from harm, even from other inmates. Instead of ensuring Mr. Mpoy's safety, the defendants abdicated their official duties with deliberate indifference and caused temporary and permanent injuries to Mr. Mpoy without any valid official justification.

187.    The defendants' actions and omissions constitute gross negligence.

188.    As a direct result of the defendants' prohibited retaliation, Mr. Mpoy suffered and will in the future suffer physical pain, emotional distress, temporary and permanent injury, exacerbation of his disability, humiliation, dehumanization, post-traumatic stress, loss of enjoyment of life, and economic and financial loss.

189.    The defendants are liable for negligence motivated by malicious intent to deprive Mr. Mpoy of the equal protection of the laws and a sadistic desire to inflict maximum physical pain and emotional distress.

190.    WHEREFORE, Plaintiff prays for a declaratory judgment against the

defendants for willful and malicious gross negligence, enjoining them from future violations; and for a monetary judgment for actual and compensatory damages in an amount to be determined by a jury; and for reasonable costs and attorneys' fees.

### CLAIM XIV - INTENTIONAL INFLICTION
### OF EMOTIONAL DISTRESS

191.    Plaintiff realleges and incorporates paragraphs 1 through 190 as if fully set forth herein.

192.    The defendants interact with detainees and inmates who have the same disability as that of Mr. Mpoy on a regular basis.

193.    At all times relevant to the events that give rise to this civil action, the defendants were aware of the nature of Mr. Mpoy's qualified disability and how Plaintiff's disability affects most individuals with such disability.

194.    The defendant's intentional and reckless denial of medication that Mr. Mpoy desperately needed and the infliction of bodily harm were motivated by ill will and malicious animus and deliberate indifference toward Mr. Mpoy's health and safety.

195.    The defendant's conduct consisting of denying Mr. Mpoy's desperate request for medication, disrobing him and placing him completely nude in a cold cell without a bed, beating him severely without any legitimate correctional purpose, applying handcuffs extremely tightly without a legitimate correctional purpose, leaving him handcuffed and restrained to a chair with his hands behind

his back for an extended period and longer than would have been necessary if justified, and stationing the chair to which Mr. Mpoy was restrained directly in front of the toilet bowl in which he had stuck his head because he was in extreme medical pain constitute reckless, extreme, and outrageous conduct that ought not to be tolerated in a civilized society.

196.    As a direct result of the defendants' reckless, extreme, and outrageous conduct, Mr. Mpoy suffered and will in the future suffer physical pain, emotional distress, temporary and permanent injury, exacerbation of his disability, humiliation, dehumanization, post-traumatic stress, loss of enjoyment of life, and economic and financial loss.

197.    The defendants are liable for reckless and intentional infliction of emotional distress.

198.    WHEREFORE, Plaintiff prays for a declaratory judgment against the defendants for intentional infliction of emotional distress, enjoining them from future violations; and for a monetary judgment for actual and compensatory damages in an amount to be determined by a jury; and for reasonable costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Mpoy having alleged sufficient facts to show above a speculative level that the defendants threatened him with bodily harm unless he

refrained from engaging in Constitutionally protected speech; that the defendants maliciously and with deliberate indifference deprived him of his rights guaranteed by the Constitution of the United States and the Constitution of Maryland; that the defendants, acting with gross negligence, sadistically and recklessly inflicted bodily injury upon Mr. Mpoy with deliberate indifference toward his health and safety and without any official justification; and that the defendants, motivated by malicious animus to discriminate against Mr. Mpoy on the basis of his qualified disability in violation of the ADA, knowingly deprived Mr. Mpoy of the equal protection of the laws and benefits, privileges, and medical programs enjoyed by other pretrial detainees; prays this Honorable Court of Law to grant relief based on Plaintiff's 14 claims and issue declaratory and monetary judgements in his favor.

Plaintiff respectfully prays the Court for any other relief it deems proper and just.

**JURY TRIAL DEMANDED**

Respectfully submitted,

Bruno K. Mpoy
10703 Lombardy Rd
Silver Spring, MD 20901
240-476-1731
mpoy@rocketmail.com